UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZINDY CORP.,

            Plaintiff,

    v.

ADMIRAL INSURANCE COMPANY,

            Defendant.

Case No.  23-cv-03893-AMO

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 24

This is an insurance coverage dispute arising out of a physical altercation at Plaintiff Zindy Corp.'s ("Zindy") Walnut Creek bar.  Defendant Admiral Insurance Company's ("Admiral") motion for summary judgment was heard before this Court on October 30, 2024.  Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Admiral's motion, for the following reasons.

I.      BACKGROUND

    A.      The Policy

Admiral issued a Commercial General Liability policy to "Zindy Corp. DBA Dan's Bar" with policy number CA000022631-06 and effective dates of October 15, 2020, to October 15, 2021 ("the Policy").  Maniscalco Decl., Ex. A (ECF 24-2 at 5-86).  The Policy states in relevant part as follows:

> SECTION I - COVERAGES
> COVERAGE A - BODILY INJURY AND PROPERTY
> DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies. We will have the right and duty to

United States District Court
Northern District of California

United States District Court
Northern District of California

defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

Maniscalco Decl., Ex. A at 21.  The Policy provides as follows for Supplementary Payments under Coverages A and B:

SUPPLEMENTARY PAYMENTS — COVERAGES A AND B
1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
a. All expenses we incur.
. . .

These payments will not reduce the limits of insurance.
Maniscalco Decl., Ex. A at 28.  The Policy includes the following relevant definitions:
SECTION V - DEFINITIONS
. . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
. . .

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged . . . .

Maniscalco Decl., Ex. A at 32, 33, and 35.

The Policy also includes an Assault & Battery Event Limited Coverage Endorsement ("the Endorsement"), which excludes from coverage injuries "actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with" battery but then adds limited coverage for an "assault or battery event" (as defined by the Policy below).  The Endorsement provides:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

Schedule
Sub-Limits of Insurance:
$25,000 Each Event (Included in the Each Occurrence Limit shown in the Declarations)
$50,000 Aggregate (Included in the General Aggregate Limit shown in the Declarations)
The Sub-Limits of Insurance shown above are included within and not in addition to the Each Occurrence Limit and General Aggregate Limit shown in the Declarations.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Supplementary Payments will reduce the Each Event and Aggregate Sub-Limits of Insurance shown above.

A. Except to the extent coverage is afforded under COVERAGE D below, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", "injury" or damages of any kind, including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with:

1. The actual, alleged or threatened assault or battery by anyone of any person while on or adjacent to the premises of any insured; or
2. The actual, alleged or threatened assault or battery by anyone of any person if in any way connected with the operations of any insured; or
3. The negligent employment, negligent investigation, negligent supervision, negligent reporting to the proper authorities or failure to so report, negligent retention or negligent hiring by any insured or any person or entity for whom any insured is or ever was legally responsible in claims alleging actual, alleged or threatened assault or battery by anyone of any person; or
4. The failure of any insured or any person or entity for whom any insured is or ever was legally responsible to prevent, suppress, mitigate or respond to actual, alleged or threatened assault or battery by anyone of any person; or
5. The failure of any insured or any person or entity for whom any insured is or ever was legally responsible to provide an environment safe from assault or battery, or to warn of the dangers of the environment which could lead to or contribute to assault or battery; or
6. The assumption of tort liability of another by any insured in any contract or agreement, including an "insured contract", if the claim arises out of Paragraphs 1 through 5 above.

. . .

COVERAGE D - ASSAULT OR BATTERY EVENT LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" caused by an "assault or battery event" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" caused by an "assault or battery event" to which this insurance does not apply. We may, at our discretion, investigate any "assault or battery event" and settle any claim or "suit" that may result. But:
(1) The amount we will pay for damages is limited as described in Paragraph 3. Sub-Limits of Insurance below; and
(2) Our right and duty to defend ends when we have used up the applicable sub-limit of insurance in the payment of judgments, settlements or Supplementary Payments under the insurance provided by this endorsement.
No other obligation or liability to pay sums or perform acts or services is covered.
. . .

3

2. Exclusions
All exclusions applicable to COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY and to LIQUOR LIABILITY COVERAGE also apply to the insurance provided by this endorsement.

3. Sub-Limits of Insurance
a. The Assault or Battery Sub-Limits of Insurance shown above and the rules below fix the most we will pay regardless of the number of:
(1) Insureds;
(2) Claims made or "suits" brought; or
(3) Persons or organizations making claims or bringing "suits".

b. The Aggregate Sub-Limit shown above is the most we will pay for all "bodily injury" and Supplementary Payments as a result of all "assault or battery events", regardless of the number of Coverage Forms made part of this policy.

c. Subject to the Aggregate Sub-Limit shown above, the Each Event Sub-Limit is the most we will pay for all "bodily injury" sustained by any one or more persons or organizations as the result of an "assault or battery event", regardless of the number of Coverage Forms made part of this policy. Supplementary Payments reduce the Each Event Sub-Limit.

4. Who Is An Insured
a. With respect to insurance provided by this endorsement, SECTION II - WHO IS AN INSURED does not include any person who actually committed the "assault or battery event", aided and abetted others in the commission of the "assault or battery event", or directed, encouraged or coerced others to commit the "assault or battery event".

5. Definition
a. "Assault or battery event" means any act that includes physical assault or physical battery committed against an individual person by anyone. More than one "assault or battery event" committed against the same person will be deemed to be a single "assault or battery event".

Maniscalco Decl., Ex. A at 70-72.

**B.     The Incident**

On September 4, 2021, Mirko Jovanovic was a patron at Dan's Bar in Walnut Creek. Bauman Decl., Ex. B at 35:5-36:3.  A bartender stopped serving Jovanovic because he appeared intoxicated, and he was escorted out of the bar.  Bauman Decl., Ex. C at 10:8-24.  Jovanovic attempted to re-enter the bar on multiple instances that evening, with varying success – he would be removed again at least once.  *Id.*, Ex. C at 11:26-12:18.

4

Jovanovic attempted to re-enter the bar shortly after midnight when he was intercepted by a bouncer at the bar, Christopher Maydahl. Bauman Decl., Ex. D at 52:21-55:13. As Maydahl tried to physically prevent Jovanovic from entering, Jovanovic's elbow swung towards Maydahl. *Id.*[1] Dante Sims, another bouncer for the bar who was not working that evening, observed the struggle with Jovanovic and approached to assist Maydahl. Bauman Decl., Ex. C at 62:2-63:5. While Maydahl restrained Jovanovic from behind, Sims applied a "C clamp chokehold" (a two-handed stranglehold) to Jovanovic, who lost consciousness. *Id.*; *see also* Bauman Decl., Ex. D at 52:21-55:13. When Jovanovic lost consciousness, Sims and Maydahl dropped him to the ground, and his head struck the ground, leading to severe injuries. Bauman Decl., Ex. B at 27:13-16, Ex. E at 8-9. Jovanovic was transported from the scene in an ambulance, admitted to a local hospital, and remained in a coma for several days. Bauman Decl., Ex. B at 7:14, 8:5-19, 36:23-37:24.

Jovanovic was hospitalized for a total of 22 days after the assault and diagnosed with a traumatic brain injury that resulted in impairments to his vision, hearing, speech, memory, and balance. Bauman Decl., Ex. F. The head injury that he sustained during the assault caused impingement of his facial nerves that has resulted in partial paralysis of the left side of his face, exhibited a by left-sided facial droop. *Id.*

The Contra Costa County District Attorney's Office charged Sims and Maydahl with battery for their roles in the incident. Compl., Ex. C at 76-85. The criminal prosecution proceeded to a trial in March 2023, and the jury acquitted both Sims and Maydahl. *Id.*

### C.    Zindy's Claim to Admiral

On September 7, 2021, Jovanovic's attorney wrote a letter to Zindy placing it on notice of potential litigation arising out of the incident. Maniscalco Decl., Ex. G. On September 8, 2021, four days after the incident, Zindy notified Admiral of the claim, which Admiral acknowledged the next day. Maniscalco Decl., Ex. H. On September 10, 2021, Admiral sent a reservation of rights letter informing Zindy that it believed the Endorsement applied to the claim because it involved

---

[1] The timing and importance of Jovanovic's elbow shot is the subject of some dispute. As discussed further below, this fact is immaterial for contract interpretation.

> an injury that arises out of, related to, caused by, contributed by or in any way connected with an actual, alleged assault or battery by anyone of any person while on or adjacent to your premises of any insured. This includes an injury that is in any way connected with your operations of any insured and also the negligent employment, negligent supervision for whom any insured is legally responsible in claims that allege assault or battery.

Maniscalco Decl., Ex. I at 4. Additionally, Admiral informed Zindy that the Endorsement's $25,000 sublimit of coverage would be "eroded by any incurred expenses." *Id.* at 5. On October 1, 2021, Admiral sent a second reservation of rights letter to Zindy reiterating that the Endorsement applied to the claim and that the $25,000 would be eroded by expenses. Maniscalco Decl. at Ex. J at 6.

Jovanovic filed suit against Zindy on April 7, 2022, in Contra Costa Superior Court. Maniscalco Decl., Ex. M; *see also* Compl., Ex. B (ECF 1-1 at 63-72). On May 11, 2022, Zindy informed Admiral of the underlying lawsuit, which Admiral acknowledged on May 12, 2022. Maniscalco Decl., Ex. N at 4-6.

On May 16, 2022, Admiral sent another reservation of rights letter to Zindy, once again explaining that the Endorsement applied and that Admiral would investigate and defend the claim up to the eroding $25,000 sublimit. Maniscalco Decl., Ex. O at 1, 7. Admiral also informed Zindy that the remaining sublimit was then $22,191.94. *Id.* at 7. On May 20, 2022, Admiral assigned counsel to defend Zindy in the underlying lawsuit and informed Zindy of the assignment. Maniscalco Decl., Ex. N at 1-2.

Jovanovic's complaint ("the underlying complaint") names Zindy, Maydahl, and Sims as defendants and seeks damages for injuries that Jovanovic sustained as a result of the assault and battery incident. Maniscalco Decl., Ex. M at 5. The underlying complaint alleges three causes of action: negligence, negligent hiring and supervision, and battery. *Id.*

The underlying complaint's first cause of action is negligence against all three defendants, alleging that Maydahl and Sims worked as Zindy's agents in the course and scope of their agency at the time of the altercation. Maniscalco Decl., Ex. M ¶¶ 4, 9. The negligence cause of action further alleges that all defendants owed Jovanovic a duty as a patron of Zindy's bar and that they breached their duty when Maydahl and Sims "negligently and carelessly embraced [Jovanovic

around his neck, head and other parts of his body. which rendered [Jovanovic] unconscious. Defendants, and each of them, then released [Jovanovic] while he was unconscious, and [Jovanovic] fell to the ground." *Id.* ¶10.  Further, the underlying complaint alleges that Zindy permitted this "contact." *Id.* ¶ 11.  Jovanovic alleges that the altercation caused his injuries and damages. *Id.* ¶¶ 13, 15-17.

The second cause of action is negligent hiring and supervision against only Zindy, but it incorporates all prior allegations.  Maniscalco Decl., Ex. M ¶ 18.  This cause of action alleges that Zindy acted negligently in hiring, training, and supervising the bouncers, that Zindy should have known of their propensity to use excessive physical force, and that Zindy's actions caused Jovanovic's injuries and damages. *Id.* ¶¶ 19-22, 24-26.

The third cause of action is battery against Maydahl and Sims, which also incorporates all prior allegations. *Id.* ¶ 27.  Jovanovic alleges that the two bouncers "intentionally, willfully, and wantonly touched [him] with the intent to harm and/or offend him." *Id.* ¶ 28.  Jovanovic alleges that the bouncers' actions caused his injuries and damages. *Id.* ¶¶ 29-30, 32-34.[2]

The underlying lawsuit is still in the discovery phase, and the court has not set a trial date. Bauman Decl., Ex. P at 2.  Zindy exhausted the Endorsement's sublimit as it has incurred $25,000 in defense costs.  Maniscalco Decl. ¶ 14.

**D.    This Action**

Zindy filed the Complaint in this lawsuit on June 23, 2023, in Contra Costa Superior Court, and Admiral timely removed the action to this Court.  Compl. (ECF 1-1).  Zindy's Complaint asserts three causes of action against Zindy: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory relief. *Id.*  Zindy's allegations of breach of contract and breach of the implied covenant of good faith and fair dealing share the same operative factual allegations:

---

[2] As noted below, Jovanovic dismissed this cause of action from the underlying complaint during the course of briefing this motion.

- Zindy asserts that the underlying complaint's negligence cause of action is not subject to the Endorsement's sublimit and that Admiral thus breached the Policy by imposing the sublimit on the defense of the underlying case as a whole.  Compl. ¶ 9.

- Zindy alleges that Admiral engaged in bad faith because it did not address caselaw that Zindy's counsel cited in a letter to Admiral on May 5, 2023, in which Zindy argued that Admiral's defense obligation to Zindy was not subject to the Endorsement's sublimit. Compl. ¶ 10, Ex. C.

- Zindy alleges that Admiral's response to Zindy's May 5, 2023, letter, which cited and applied controlling California caselaw interpreting assault and battery endorsements, was made in bad faith because these cases are "clearly distinguishable."  Compl. ¶¶10-11, Ex. D.

- Zindy alleges that the caselaw cited by Admiral is "clearly distinguishable" because the operative complaints in those cases pled their negligence causes of actions after their battery causes of action, incorporated allegations that were commonly pled with the battery causes of action, or both.  Compl. ¶¶ 12-15, Exs. E, F, and G.

Zindy's second cause of action for breach of the implied covenant of good faith and fair dealing further alleges that Admiral "acted despicably, willfully, wantonly, oppressively, fraudulently and/or in conscious disregard of the rights of Plaintiff."  Compl. ¶ 24.  Zindy's third cause of action seeks a declaration of the parties' respective rights pursuant to the Policy.  Compl. ¶¶ 26-31.

## II.    DISCUSSION

Admiral moves for summary judgment on all Zindy's causes of action.  A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material

8

facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence

for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

When deciding a summary judgment motion, a court must view the evidence in the light

most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson*,

477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  The court's

function on a summary judgment motion is not to make credibility determinations or weigh

conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc. v. Pac.*

*Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Where the moving party will have the burden of proof at trial, it must affirmatively

demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun*

*v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving

party will bear the burden of proof at trial, the moving party may carry its initial burden of

production by submitting admissible "evidence negating an essential element of the nonmoving

party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have

enough evidence of an essential element of its claim or defense to carry its ultimate burden of

persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-

06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (moving party can prevail merely by

pointing out to the district court that there is an absence of evidence to support the nonmoving

party's case).  Indeed, where the nonmoving party bears the burden of proof at trial, its burden of

production in opposing a motion for summary judgment " 'is not a light one' – it 'must show more

than the mere existence of a scintilla of evidence' or 'some "metaphysical doubt" ' as to the

material facts at issue.' "  *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d

893, 897 (9th Cir. 2021) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir.

2010)).

At its core, this is a dispute about insurance policy coverage.  The interpretation of an

insurance policy is governed by state law.  *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp. 2d 1027,

1032 (N.D. Cal. 2004).  Under California law, the interpretation of an insurance policy is a

1    question of law to be determined by the court if there is no genuine issue of material fact.  *See*

2    *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1150 (9th Cir. 1998) ("based on the undisputed,

3    material (i.e., outcome-determinative) facts, liability arising out of the attempted robbery and

4    battery was not the result of an 'occurrence' and that Blue Ridge has no duty to indemnify the

5    Estate"); *see also Sprinkles v. Associated Indem. Corp.*, 188 Cal. App. 4th 69, 76 (2010) (stating

6    that the interpretation of an insurance policy's exclusion is a question of law).

7        In determining whether an insured's claim gives rise to a duty to defend under an insurance

8    policy, courts are guided by the principle "that interpretation of an insurance policy is a question

9    of law." *Waller*, 11 Cal. 4th at 18.  "Under statutory rules of contract interpretation, the mutual

10   intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v.*

11   *Superior Court*, 51 Cal.3d 807, 821-22 (1990) (citation omitted).  In determining this intent, courts

12   "look first to the language of the contract in order to ascertain its plain meaning or the meaning a

13   layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18.  The "clear and explicit"

14   language of the policy is considered and interpreted in its "ordinary and popular sense," unless

15   "used by the parties in a technical sense or a special meaning is given to them by usage." *AIU*, 51

16   Cal. 3d at 822.  Courts "interpret the language in context, with regard to its intended function in

17   the policy." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1256 (1992).

18       California law additionally provides that "[t]he duty to defend is determined by reference

19   to the policy, the complaint, and *all* facts known to the insurer from any source*." Zelda, Inc. v.*

20   *Northland Ins. Co.*, 56 Cal. App. 4th 1252, 1261 (1997) (citing *Montrose Chem. Corp. v. Superior*

21   *Court*, 6 Cal. 4th 287, 300 (1993) (emphasis in original)).  "For an insurer, the existence of a duty

22   to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but

23   upon those facts known by the insurer at the inception of a third party lawsuit." *Montrose Chem.*

24   *Corp.*, 6 Cal. 4th at 295 (citations omitted).  In other words, "the duty to defend runs to claims that

25   are merely potentially covered, in light of facts alleged or otherwise disclosed." *State Farm Gen.*

26   *Ins. Co. v. Phillips*, 591 F. Supp. 3d 680, 686 (C.D. Cal. 2022) (quotation and citation omitted).

27       An insurer's "duty to defend, although broad, is not unlimited; it is measured by the nature

28   and kinds of risks covered by the policy." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 19

(1995).  In determining whether a duty to defend exists, courts must start by comparing "the allegations of the complaint with the terms of the policy." *Id.* at 19.  But "[i]t has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of . . . facts giving rise to the potential for coverage under the insuring agreement." *Id.* at 19.  Therefore, any "[f]acts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* at 19.  Generally, this duty is assessed "at the time of the tender of the defense." *B & E Convalescent Ctr. v. State Comp. Ins. Fund*, 8 Cal. App. 4th 78, 92 (1992).

Zindy argues that the motion should be denied because there exists a dispute of fact regarding the physical contact between Jovanovic and the bouncers.  Moreover, Zindy contends that any evidence that Admiral has offered to support its theory that Zindy's bouncers "choked out" Jovanovic is inadmissible and that Zindy has somehow raised an issue of triable fact as to whether the Endorsement applies to the underlying lawsuit.³  Opp. at 14.  Zindy avers that the particular facts of the event should have influenced Admiral's coverage decision, including its duty to defend.  Opp. at 15.  Zindy misses the mark.

The exact movements and severity of the bouncers' conduct and whether Zindy's bouncers in fact "choked out" Jovanovic are immaterial to Admiral's coverage assessment.  Indeed, the factual proof in support of the purported assault, the nuances of whether the bouncers intended to cause harm to Jovanovic, and even the acquittal of the bouncers for assault all prove irrelevant to the analysis of Admiral's coverage assessment.

Crucially, it is the allegations in the underlying complaint that form the basis of the insured's claims for coverage.  The complaint underlying Zindy's claim for coverage alleges that Jovanovic sustained his injuries as a result of "contact" between Jovanovic and the bouncers that

---

³ Zindy objects to the materials submitted by Admiral in support of its motion as hearsay and/or unauthenticated. *See* ECF 26-5.  The Court OVERRULES Zindy's objections as procedurally defective because objections "must be contained within the brief or memorandum," not filed separately as Zindy does here.  Civ. L.R. 7-3(a).  Even if Zindy had complied with the Local Rules, the Court would overrule the objections because the materials proffered by Admiral are not offered for the truth of their contents, but for their effect on Admiral in making its coverage determination.

United States District Court
Northern District of California

1    he creatively describes as a "negligent[ ] and careless[ ] embrace[ ] . . . around his neck, head and

2    other parts of his body, which rendered [him] unconscious."  Maniscalco Decl., Ex. M ¶¶ 10-11.

3    Reading the underlying complaint as a whole, Jovanovic's alleged injuries occurred because of the

4    "contact" between him and the bouncers, which he describes in his battery cause of action as

5    intentional, willful, and wanton touching with the intent to harm him.  *Id.* ¶¶ 11, 28.  Indeed, the

6    contact between Jovanovic and the bouncers plainly represents an "alleged assault and battery"

7    that triggered the Endorsement where the bouncers faced criminal prosecution for assault.  *See*

8    Zindy RJN, Ex. 1.  The allegations in the underlying complaint – along with the undisputed fact

9    that the bouncers were criminally prosecuted for alleged acts of assault – make clear that the

10   underlying complaint against Zindy arises out of, is related to, or is connected to the bouncers'

11   alleged assault or battery of Jovanovic.  Whether and when Jovanovic allegedly swung an elbow at

12   Maydahl is immaterial to interpretation of the Policy provision's broadly-phrased limitation on

13   coverage arising from such an event.  Zindy's attempt to inject a factual dispute is unrelated to

14   whether Admiral breached the Policy by limiting its coverage under the Endorsement.

15          The Endorsement limits coverage for "bodily injuries . . . or damages of any kind"

16   "actually or allegedly arising out of, related to, caused by, contributed to by, or in any way

17   connected with" an assault or battery that occurs on or adjacent to the Zindy's premises; in any

18   way connected to Zindy's operations; or Zindy's or its bouncers' alleged failure to "prevent,

19   suppress, mitigate or respond to actual, alleged or threatened assault or battery by anyone of any

20   person."  Maniscalco Decl., Ex. A at 70-71.  That language plainly applies here, where the

21   complaint underlying Zindy's claim for coverage alleges that Jovanovic sustained his injuries as a

22   result of "contact" between Jovanovic and the bouncers that he creatively describes as a

23   "negligent[ ] and careless[ ] embrace[ ] . . . around his neck, head and other parts of his body,

24   which rendered [him] unconscious."  Maniscalco Decl., Ex. M ¶¶ 10-11.  Reading the underlying

25   complaint as a whole, Jovanovic's alleged injuries occurred because of the "contact" between him

26   and the bouncers, which he describes in his battery cause of action as intentional, willful, and

27   wanton touching with the intent to harm him.  *Id.* ¶¶ 11, 28.  Jovanovic sustained his injuries when

28   the bouncers dropped his unconscious body to the ground.  Bauman Decl., Ex. C at 62:2-63:5, Ex.

United States District Court
Northern District of California

1    D at 52:21-55:13 (criminal trial transcripts). In other words, his injuries, his resulting lawsuit, and

2    Zindy's claim under the Policy all arose out of an alleged battery.

3      Zindy seeks to evade the Endorsement's application to Jovanovic's garden-variety

4    negligence cause of action because it appears first in his complaint and does not incorporate the

5    third cause of action for assault and battery.[4] Zindy's creative argument lacks any legal support.

6    The cases that apply an assault and battery endorsement in an insurance policy do not attach any

7    significance to the location of a negligence cause of action in the structure of a complaint or its

8    incorporation of paragraphs describing an assault or battery. *See, e.g.*, *Northfield Ins. Co. v.*

9    *Sandy's Place, LLC*, 530 F. Supp. 3d 952, 957 (E.D. Cal. 2021); *Mt. Vernon Fire Ins. Corp. v.*

10    *Oxnard Hosp. Enter., Inc.*, 219 Cal. App. 4th 876, 879 (2013); *Century Transit Sys., Inc. v. Am.*

11    *Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 124 (1996). Moreover, this argument

12    regarding the ordering of claims in a pleading ignores the reality within California law that

13    "claims do not exist in the ether, they consist of pleaded allegations coupled with extrinsic facts.

14    That is what defines the insurer's coverage duties, not the label chosen by the pleader." *Uhrich v.*

15    *State Farm Fire & Cas. Co.*, 109 Cal. App. 4th 598, 611 (2003), as modified on denial of reh'g

16    (July 9, 2003). Zindy's argument that its claim for coverage arises from Jovanovic's negligence

17    cause of action simply fails, as several courts have discounted this exact argument and held that

18    assault and battery exclusions like the one at issue apply to negligence claims arising from the

19    same event as an alleged battery. *See, e.g.*, *Northfield Ins. Co.*, 530 F. Supp. 3d at 964. Indeed,

20    Zindy apparently acknowledges that interpretation of policy exclusions requires review not of the

21    intentionality behind a tortious act nor the exact claim pleaded to trigger coverage, conceding that

22    assault and battery exclusion "language places the focus not upon the insured's conduct or intent,

23    but rather upon the type of event in which plaintiff was injured." Opp. at 20 (quoting *Century*

24    *Transit Sys.*, 42 Cal. App. 4th at 126).

25    

26    _____

27    [4] Jovanovic dismissed his third cause of action for battery against the bouncers on May 22, 2024, twelve days after Admiral moved for summary judgment and two days before Zindy filed its Response. *See* Zindy RJN, Ex. 2 (ECF 26-4 at 12-16). Zindy cites this dismissal as a basis to

28    distinguish Jovanovic's negligence claim from any battery in an effort to show that the negligence claim is covered by the Policy.

United States District Court
Northern District of California

The underlying complaint's allegations of negligence against Zindy are undoubtedly "arising out of, related to, caused by, contributed to by, or in any way connected with" the "harmful physical contact" between Jovanovic and the bouncers as well as Zindy's failure to prevent that contact.  Accordingly, the Endorsement applies to Zindy's claim, and Admiral's coverage is limited to $25,000.  Zindy offers no dispute that it exhausted the Endorsement's sublimit because it has incurred $25,000 in defense costs.  Maniscalco Decl. ¶ 14.  Therefore, Admiral fulfilled its obligations under the terms of the Policy, and Zindy's claim for breach of contract fails as a matter of law.[5]

## III.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant Admiral Insurance Company's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: December 2, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

---

[5] Under California law, "without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citing *Waller*, 11 Cal. 4th 1, (1995)).  Here, because the Court finds that Zindy's breach of contract claim fails, Zindy's claim for breach of the implied covenant of good faith and fair dealing must also fail.  The same result follows for Zindy's third cause of action for declaratory relief based on the alleged breach.